UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 6:18-cr-223-Orl-37EJK

ROSE BETH LITZKY

_____

## ORDER

Before the Court is Defendant Rose Beth Litzky's Renewed Motion for Judgment of Acquittal and Motion for New Trial. (Doc. 180 ("**Motion**").) The Government opposes. (Doc. 199.) On review, the Motion is denied.

## I.      BACKGROUND

In this child pornography case, a federal grand jury returned an indictment against Ms. Litzky and her co-conspirator Robert Oquendo on September 26, 2018. (Doc. 1 ("**Indictment**").) The Indictment charged Ms. Litzky with conspiracy to produce child pornography, production of child pornography, and possession of child pornography—all involving Ms. Litzky and Mr. Oquendo's two minor daughters. (*Id.*; *see also, e.g.*, Doc. 190.) Following a jury trial beginning on July 23, 2019, the jury returned a guilty verdict on all counts against Ms. Litzky. (Docs. 142, 156.)

After the denial of Ms. Litzky's oral motion for judgment of acquittal and renewed motion, Ms. Litzky now moves for a post-trial judgment of acquittal and new trial based on the alleged insufficiency of the evidence and the Court's exclusion of duress and diminished capacity evidence. (*See* Docs. 146, 147, 180.) With the Government response

(Doc. 199), the matter is ripe.

## II.    LEGAL STANDARDS

### A.    Rule 29(c) Motion for a Judgment of Acquittal

Federal Rule of Criminal Procedure 29(c) permits a defendant to move for a judgment of acquittal challenging the sufficiency of evidence to support the verdict. The court must "evaluate the evidence in the light most favorable to the government, and draw all reasonable inferences and credibility assessments in the government's favor." *United States v. Dean*, 487 F.3d 840, 847 (11th Cir. 2007) (citing *United States v. Harris*, 20 F.3d 445, 452 (11th Cir. 1994)). "[N]o distinction is to be made between the weight given to either direct or circumstantial evidence." *United States v. Doe*, 661 F.3d 550, 560 (11th Cir. 2011) (quoting *United States v. Mieres-Borges*, 919 F.2d 652, 656–57 (11th Cir. 1990)). For the verdict to stand, "[a]ll that is necessary is that a reasonable factfinder could conclude that the evidence establishes guilt beyond a reasonable doubt." *Mieres-Borges*, 919 F.2d at 656 (citing *United States v. Kelly*, 888 F.2d 732, 740 (11th Cir. 1989)).

### B.    Rule 33 Motion for a New Trial

Rule 33(a) permits a court, on a defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." When, as here, excluding evidence is at issue, a new trial isn't warranted for "alleged errors in exclusion of evidence where matters of substance are not affected." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 231 (1940) (citation omitted). Instead, a new trial is warranted only if "[a] significant possibility . . . exist[s] that, considering the other evidence presented by both the prosecution and the defense, the . . . [error] had a substantial impact upon the verdict of

the jury." *United States v. Arbolaez*, 450 F.3d 1283, 1290 (11th Cir. 2006) (quoting *United States v. Rodriguez*, 524 F.2d 485, 487 (5th Cir. 1975)[1]). "[W]here an [evidentiary] error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990).

Whether a defendant gets a new trial "falls 'within the sound discretion of the trial court.'" *United States v. Albury*, 782 F.3d 1285, 1295 (11th Cir. 2015) (quoting *United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994)). The discretion to grant a new trial, however, is not without limit: "The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *United States v. Martinez*, 763 F.2d 1297, 1312–13 (11th Cir. 1985) (citation omitted). Instead, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* (citations omitted). Courts should grant a new trial "sparingly and with caution," only in "exceptional cases." *Id.* (citation omitted).

## III.   DISCUSSION

Ms. Litzky raises two overarching arguments: First, the Government failed to present enough evidence to establish guilt on any charge. (Doc. 180, pp. 1–5 ("**JOA Motion**").) Second, the Court erred in excluding Ms. Litzky's evidence of duress and

---

[1] The decisions of the former Fifth Circuit rendered before October 1, 1981 are binding on this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

diminished capacity related to the specific intent to commit the crimes charged. (*Id.* at 5–11 ("**New Trial Motion**").) The Court takes up each below.[2]

## A.     JOA Motion

Ms. Litzky argues the evidence could not establish guilt on any charge because there wasn't evidence: (1) she "knowingly, willfully, and intentionally conspired with [another]" or knowingly acted "for the purpose of producing visual depictions of such conduct" for the conspiracy charge; or (2) she aided or abetted anybody to produce or possess images of child pornography for the production and possession charges. (*See* Doc. 180, pp. 1–5.) She argues "the evidence as to Ms. Litzky's agreement, knowledge, and intent was insufficient to sustain the jury's verdict." (*Id.* at 2.) Yet a review of the trial evidence undermines this argument.

The jury heard testimony from the agents involved in investigating the conduct underlying the Indictment, Ms. Litzky's co-conspirator Mr. Oquendo, Ms. Litzky, and other family members. The jury also heard recordings and viewed transcripts of law enforcement interviews about Ms. Litzky's involvement in the crimes charged and read text message and ooVoo chat exchanges between Ms. Litzky and Mr. Oquendo.[3] And the jury saw the images constituting the child pornography at issue. The evidence of Ms. Litzky's guilt on all charges was overwhelming.

For the production and possession charges, the law enforcement agents'

---

[2] In preparation for this Order, the Court reviewed the relevant transcript excerpts and exhibits from the trial.

[3] OoVoo is a live chat social media application, like Skype, which includes a live video feed and chat feature. (*See* Doc. 190, pp. 29–30.)

testimony, interview recordings and transcripts, and Ms. Litzky's testimony were illuminating. From the interviews, the jury heard Ms. Litzky admit to taking many nude images of her children focused on the vaginal area for Mr. Oquendo. (*See, e.g.*, Doc. 157-5, pp. 32–33, 40–42, 51; Doc. 157-6, pp. 2–7, 15–17, 25–29, 40–42; Doc. 190, pp. 26, 32–33, 42, 50–58; Doc. 180, pp. 40, 46.) Ms. Litzky said she would spread the children's legs and vaginal areas apart for the photographs to send to Mr. Oquendo. (*See* Doc. 157-5, p. 42; Doc. 157-6, pp. 2–7, 15–17, 40–42; Doc. 190, pp. 32–33, 42, 50–58.) During the interviews, Ms. Litzky also relayed this exchange with one child:

> I tell her, "[child's name], open your legs." And she like, "For Daddy?" I like, "Yes, for Daddy." "Again?" I like, "Yeah." And, um, she like, "Oh, I know what Daddy likes." I'm like, "Oh, what does Daddy likes?" And then she puts her finger on her vagina and . . . ."

(Doc. 157-6, p. 18.) Some images the jury saw showed the children posing in this way. (*Cf.* Doc. 157.) When Ms. Litzky testified, she made many of these same admissions about posing her children and taking many nude photographs of them. (*See, e.g.*, Doc. 186, pp. 10, 15–18, 39.) From this evidence, the jury could reasonably find Ms. Litzky knowingly produced and possessed child pornography.

For the conspiracy charge, the ooVoo chats and text messages between Ms. Litzky and Mr. Oquendo and their respective testimony spotlighted Ms. Litzky's knowing and willing participation. These chats and messages showed Ms. Litzky offered to send Mr. Oquendo nude photographs of their daughters, sometimes at his request, sometimes with no prompting. (*See* Docs. 157-11–157-14.) Mr. Oquendo testified that he would chat with Ms. Litzky almost daily using the ooVoo platform, during which Ms. Litzky would

produce live transmissions of the children's vaginal area for Mr. Oquendo. (*See* Doc. 184, pp. 143–44, 147–49, 178, 167–68, 175.) He said Ms. Litzky was aware Mr. Oquendo had a sexual interest in children and that he would take screenshots of these live transmissions. (*See id.* at 147–49, 178, 150, 167–68, 175.) These screenshots depict Ms. Litzky sometimes smiling while causing the children to spread their legs apart for Mr. Oquendo. (*Cf.* Doc. 157; Doc. 190, pp. 32–33, 50–53, 56.) They also show Ms. Litzky manipulating her daughters' bodies to make visible their vaginal areas for Mr. Oquendo. (*Cf.* Doc. 157; Doc. 190, pp. 32–33, 50–53, 56.) Ms. Litzky testified that she knew it was wrong but did it anyway because the nude images made Mr. Oquendo happy. (*See* Doc. 186, pp. 18, 21, 23, 36, 39.) And her admissions during interviews with law enforcement were consistent with all this. (Doc. 157-5, pp. 32–33, 39, 41–42, 50; Doc. 157-6, pp. 7–8, 15–17, 28–29, 38, 42.) From this evidence, the jury could reasonably find Ms. Litzky and Mr. Oquendo had a mutual understanding or agreement about the unlawful sexual exploitation of their children in producing child pornography and she knowingly and willfully joined in it.

Ms. Litzky contends all this is still not enough to prove guilt on any of the charges, but her assertions are unavailing. (*See* Doc. 180, pp. 1–5.) For the conspiracy charge, she says evidence of the agreement came from Mr. Oquendo, who wasn't a credible witness. (*Id.* at 3–4.) She wanted to impeach him by showing the jury evidence of "what true child pornography entailed" and "the heinous acts he committed," and the Court wouldn't let her. (*Id.* at 3.) But the Court excluded this evidence because this was Ms. Litzky's trial, not Mr. Oquendo's, and she failed to articulate how that evidence was relevant or would impeach Mr. Oquendo. He even admitted under oath he produced images and videos of

child pornography involving his daughters and performed sexual acts on them. (*See* Doc. 163, pp. 24–26; Doc. 184, pp. 134–41.) And the Court must construe all reasonable inferences and credibility assessments in the Government's favor. *See Dean*, 487 F.3d at 847.

Ms. Litzky also says the evidence of knowledge and willfulness for the conspiracy charge wasn't enough because it came from a limited view of electronic communications, law enforcement testimony, and Mr. Oquendo—the jury didn't have the full picture of Ms. Litzky's intellectual deficits and Mr. Oquendo's alleged abuse of Ms. Litzky. (Doc. 180, pp. 3–4.) This argument ignores one major thing: the abundance of evidence that proved Ms. Litzky's knowledge and willfulness. For the JOA Motion the Court must look to the sufficiency of the evidence presented, not the other evidence Ms. Litzky wanted to present. As to Ms. Litzky's intellectual deficits, the jury had the chance to assess Ms. Litzky's intellectual abilities through the interview recordings, her testimony, and law enforcement agents' perception of her understanding of her conduct and appreciation of its unlawfulness. (*See, e.g.*, Doc. 157-5, pp. 41–42, 46, 50; Doc. 157-6, pp. 28–29, 34, 38, 42; Doc. 190, pp. 13–14, 22, 34, 69; Doc. 188, pp. 44–45.) Ms. Litzky even admitted during the interviews and at trial that it was wrong and unlawful and explained why she did it anyway. (*See* Doc. 157-5, pp. 39–42, 50; Doc. 157-6, pp. 15–17, 28–29, 34, 38, 42; Doc. 186, pp. 18, 21, 23, 36.) As to Mr. Oquendo's alleged abuse, the law enforcement officers, Ms. Litzky, her parents, and Mr. Oquendo all testified about this—Mr. Oquendo denied it, the parents didn't see it, and Ms. Litzky insisted it happened. (*See, e.g.*, Doc. 190, pp. 62, 67, 72; Doc. 184, pp. 144–45, 150; Doc. 186, pp. 6–15, 17–21; Doc. 188, pp. 52–59, 67; *see also*

Docs. 157-5–157-6.) On view of all the evidence, the jury reasonably decided Ms. Litzky knowingly and willfully agreed to and participated in a conspiracy to produce child pornography.

For the production and possession charges, Ms. Litzky hangs her argument on the Government's eleventh-hour request for and the Court's inclusion of the aiding and abetting jury instruction, contending there was no evidence Ms. Litzky aided or abetted anyone in the commission of these charges. (Doc. 180, p. 5.) Despite the jury's general verdict form (*see* Doc. 156),[4] there was enough evidence of Ms. Litzky's guilt as either a principal or aider and abettor. Ms. Litzky admitted she acted for Mr. Oquendo and sometimes at his express request to position the children in sexual poses, produce visual depictions, and transmit those depictions to him. (*See, e.g.*, Docs. 157-5–157-6; Doc. 184, pp. 143–44, 147–49, 178, 167–68; Doc. 186, pp. 10, 15–16, 18–23, 36, 39.) For the visual depictions in the Indictment, Ms. Litzky admitted (at times) she produced them for Mr. Oquendo, and he admitted he requested them. (*See, e.g.*, *id.*) The ooVoo chats, text messages, and their respective testimony also revealed Ms. Litzky and Mr. Oquendo willfully joined together and acted to produce and possess child pornography—over hundreds of nude images of their daughters. (*See, e.g.*, *id.*; *see also* Docs. 157-11–157-14.) Adding the aiding and abetting instruction was ultimately of no moment given the weight of evidence against Ms. Litzky.

Viewing all evidence in the light most favorable to the Government and drawing

---

[4] The jury verdict form didn't reveal whether the jury found her guilty as a principal or as an aider and abettor. (*See* Doc. 156.)

all reasonable inferences and credibility choices in favor of the jury's guilty verdict, a reasonable jury could conclude the evidence established Ms. Litzky's guilt beyond a reasonable doubt on all charges. *Cf. Mieres-Borges*, 919 F.2d at 656; *Dean*, 487 F.3d at 847. So Ms. Litzky's sufficiency-of-evidence argument falls and the verdict stands.

**B.    New Trial Motion**

Ms. Litzky contends a new trial is warranted based on the Court's alleged error in excluding evidence of duress and diminished capacity as it relates to Ms. Litzky's specific intent to commit the crimes charged. (Doc. 180, pp. 5–11.) This argument misses the mark for new trials based on evidentiary errors. Even if the Court erred, error alone is not enough. Ms. Litzky must show a significant possibility exists that any error affected the jury's verdict. *Cf. Arbolaez*, 450 F.3d at 1290 (discussing what's necessary for a new trial based on alleged errors in the exclusion of evidence). She hasn't done so here, particularly considering the evidence presented.

Ms. Litzky first claims the Court erred by excluding evidence of duress as it relates to her criminal intent and the limited duress evidence permitted was not enough to give her a fair trial. (Doc. 180, pp. 6–7.) The evidence she says should have come in includes evidence of Mr. Oquendo's past sexual abuse of his sister and his past threats, abuse, and intimidation of Ms. Litzky. (*Id.* at 7.) But evidence of Mr. Oquendo's sexual abuse of his sister when they were young was irrelevant to Ms. Litzky's case, and she failed to offer an appropriate basis for its inclusion, so the Court properly excluded it. And evidence of Mr. Oquendo's past threats, abuse, and intimidation, although limited during parts of the trial, was adequately admitted. (*See, e.g.*, Docs. 157-5–157-6; Doc. 190; Doc. 184; Doc. 186;

Doc. 188.)

The relevance of duress evidence was the source of much confusion and discussion during trial. After duress evidence was introduced—through the recorded interviews, interview transcripts, and law enforcement testimony—the Court expressed concern about potential jury confusion from this evidence as Ms. Litzky hadn't shown the elements necessary for a duress affirmative defense, acknowledging it may have some relevance as to the voluntariness of her confession, for example. (Doc. 175, pp. 4–7, 25.) Ms. Litzky admitted she didn't have the evidence to support a duress affirmative defense but argued duress evidence was relevant to the specific intent crime of conspiracy, if not production,[5] as duress evidence bears on the question of whether Ms. Litzky willfully joined any conspiracy. (*Id.* at 7–8, 22, 26; Doc. 177, p. 4.) The Government countered that no correlation exists between Ms. Litzky's duress defense and the "willfulness aspect of the conspiracy count." (Doc. 177, p. 5.) The Court sided with the Government, excluding further duress evidence because: (1) willfulness focuses on acting with the intent to do something the law forbids and the record reflected Ms. Litzky acknowledged taking the photographs was wrong; and (2) Ms. Litzky lacked the evidence to meet the elements of the duress affirmative defense, namely the immediacy of harm/imminent danger component. (*Id.* at 5–10.) The exclusion was short-lived, however, as both sides continued to ask duress-related questions (without objection) on whether there was evidence Mr.

---

[5] Confusion on the matter stemmed in part from Ms. Litzky disagreeing with the Court's finding and Eleventh Circuit law that production of child pornography is not a specific intention crime. (*See* Doc. 175, pp. 7, 21.)

Oquendo threatened Ms. Litzky. (*Id.* at 11–12.) To ensure Ms. Litzky had a fair trial, the Court permitted Ms. Litzky to introduce evidence on the limited issue of whether Mr. Oquendo ever threatened her.[6] (*Id.* at 12–16.)

Here's the duress evidence presented. The recorded interviews of Ms. Litzky included Ms. Litzky accusing Mr. Oquendo of violence and threatening conduct and the agents expressing doubts about the veracity of those allegations. (*See* Doc. 157-5, pp. 45–46; Doc. 157-6, pp. 18–19, 36–36; Doc. 190, pp. 62, 67, 72.) Ms. Litzky testified to the same at trial, although she admitted that when she offered to show Mr. Oquendo her children in the nude, she was not under any threats from him and sometimes did so without his request. (*See* Doc. 186, pp. 6–11, 12–1517–21.) This is especially true while he was residing in another state during the relevant dates: "there was no risk at the time that [Mr. Oquendo] would physically harm [her] or the children." (*See id.* at 17–21.) She also said she sent him the images because she wanted to make him happy and to get money from him—even though she knew it was wrong. (*See id.* at 18, 21, 23, 36; *see also* Doc. 157-5, pp. 39–42, 50; Doc. 157-6, pp. 7–8, 15–17, 38, 42.) Despite Ms. Litzky's threat allegations, the ooVoo chats and text messages lacked any threats by Mr. Oquendo. (*See* Docs. 157-11–157-14.) Mr. Oquendo testified that he never threatened Ms. Litzky if she didn't expose the children to him, and even Ms. Litzky's proffer of additional evidence outside the jury's presence involved Mr. Oquendo repeatedly denying he never threatened or hit her. (*See* Doc. 184, pp. 144–45, 150, 217–18.) Ms. Litzky's parents and Mr. Oquendo's sister all

---

[6] The Court also noted this evidence was relevant to the question of whether Ms. Litzky's statements to law enforcement were truthful and voluntary. (Doc. 177, p. 16.)

stated they never saw Mr. Oquendo threaten or hit Ms. Litzky, although they all claimed he was violent and Mr. Oquendo's sister said Ms. Litzky mentioned threats. (*See* Doc. 188, pp. 52–59, 67, 77, 79.) From this, there wasn't enough evidence to support a duress jury instruction; even Ms. Litzky conceded that much. (*see* Doc. 175, pp. 7, 8–10.) And ample evidence of duress was permitted for the jury to consider whether Ms. Litzky had the requisite intent to commit the crimes charged. The jury found she did based on the evidence presented, which as discussed was overwhelming. *See supra* Section III.A. Thus, Ms. Litzky has failed to show how any additional evidence of duress would have had any impact—and especially a *substantial* one—on that result.

Ms. Litzky next claims the Court erred in excluding evidence of Ms. Litzky's diminished capacity because it "was crucial to her defense" and would have "reveal[ed] a pertinent trait that would have negated the specific intent element during the time of the charged offenses." (Doc. 180, pp. 8–11.) Without reference to the specific evidence Ms. Litzky contends the Court should have admitted, she says the excluded evidence "would have shown that her pertinent trait is her tendency to always try to please people, especially those who have manipulated her, even if it harms her and thus she would do things for that purpose, rather than harboring any criminal intent." (*Id.* at 11.) Again, Ms. Litzky hasn't shown any error would have affected the jury's verdict.

The Court excluded Ms. Litzky's evidence of diminished capacity, including expert testimony from Dr. Valerie McClain, Social Security and school records, and other testimony. The Court excluded Dr. McClain's testimony under Rule 702 and the *Daubert* standard for many reasons. (*See* Doc. 102.) Dr. McClain's opinions were problematic

largely because they "d[id] not focus on [Ms. Litzky's] specific state of mind at the time of the charged offenses" — they were not "adequately keyed" to whether Ms. Litzky had the specific intent at the relevant time and failed to show how Ms. Litzky "was unable to form the required *mens rea* for the charged offenses." (*Id*. at 9–10.) Beyond that, her opinions lacked an adequate foundation and would not help the jury; "the jury would . . . be left to speculate as to the effect of her level of intellectual disability and other mental health issues on her ability to form the requisite *mens rea* to commit the charged crimes and her reasons (whether Mr. Oquendo's alleged undue influence or otherwise) for doing so." (*Id*. at 11–14.) The Court excluded Ms. Litzky's other evidence of diminished capacity as untimely disclosed. (*See* Doc. 163, pp. 18–22; Doc. 175, pp. 24, 28.) Nothing in Ms. Litzkly's New Trial Motion establishes any error.

Even if the Court erred, Ms. Litzky didn't show any error influenced the jury's verdict. Ms. Litzky tries to argue a different result may have issued because the excluded diminished capacity evidence would have shown Ms. Litzky tended to "always try to please people" and thus acted for that purpose, not with criminal intent. (Doc. 180, p. 11.) This is the first time Ms. Litzky has argued this, and it is unconvincing. Ms. Litzky testified that she produced visual depictions of her daughters in the nude and sent them to Mr. Oquendo to make him happy — to please him. (*See, e.g.*, Doc. 186, pp. 18, 21, 23, 36; *see also, e.g.*, Doc. 157-5, pp. 39, 41–42, 50–51; Doc. 157-6, pp. 4, 7–8, 15–17, 28–29, 38–42.) The jury found acting to please Mr. Oquendo didn't negate the requisite intent to commit the crimes charged given the other evidence. This is because what pleased Mr. Oquendo was the unlawful act of producing and possessing child pornography and sending it to

him. (*Cf.* Doc. 184, pp. 134–41, 150, 167–68, 175.) Other evidence the jury heard revealing Ms. Litzky's intellectual abilities and capacity also undermines this argument. The jury heard recorded interviews of Ms. Litzky, the agents' perceptions of her abilities during those interviews, and Ms. Litzky's own testimony, all reflecting not only her participation in the crimes charged but also her ability to respond to questions and appreciate the wrongfulness and serious consequences of her actions. (*See, e.g.,* Doc. 157-5, pp. 41–42, 46, 50; Doc. 157-6, pp. 38, 42; Doc. 190, pp. 13–14, 22; Doc. 184, pp. 34, 69; Doc. 188, pp. 44–45; Doc. 186, pp. 23, 23, 36.) Given the evidence of guilt, other evidence of Ms. Litzky's diminished capacity would not have impacted the jury's verdict.

On review, the evidence fails to preponderate heavily against the verdict so that it would be a miscarriage of justice to let the verdict stand. *Martinez*, 763 F.2d at 1313. And if the Court erred in excluding any evidence of duress or diminished capacity, there is not a significant possibility that any error had a substantial impact on the jury's verdict considering the evidence. *Cf. Arbolaez*, 450 F.3d at 1290; *Hawkins*, 905 F.2d at 1493. So the Court declines to exercise its discretion to grant a new trial.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Rose Beth Litzky's Renewed Motion for Judgment of Acquittal and Motion for New Trial (Doc. 180) is **DENIED.**

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 11, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record